1

**COMP**
Jacob L. Hafter, Esq
Nevada Bar No. 9303
John P. Aldrich, Esq.
Nevada Bar No. 6877
**BLACK & LOBELLO**
10777 W. Twain Avenue, Suite 300
Las Vegas, NV 89135
(702) 869-8801
*Attorneys for Plaintiff*

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

9

10

RICHARD CHUDACOFF, MD, an
individual,

CASE NO.
DEPT. NO.

11

12

Plaintiff,

13

14

vs.

15

UNIVERSITY MEDICAL CENTER OF
SOUTHERN NEVADA, a political
subdivision of Clark County, State of Nevada,
COMMISSIONER RORY REID, an
individual, KATHLEEN SILVER, an
individual, BRIAN BRANNMAN, an
individual, THE MEDICAL AND DENTAL
STAFF OF THE UNIVERSITY MEDICAL
CENTER OF SOUTHERN NEVADA, an
independent subdivision of University
Medical Center of Southern Nevada, JOHN
ELLERTON, MD, an individual, MARVIN J.
BERNSTEIN, MD, an individual, DALE
CARRISON, MD, an individual, DONALD
ROBERTS, MD, an individual, DOE
Defendants I through X, inclusive; and ROE
CORPORATIONS A through Z, inclusive,

16

17

18

19

20

21

22

23

24

25

26

Defendants.

27

28

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
ECONOMIC DAMAGES**

COMES NOW, Plaintiff RICHARD CHUDACOFF, by and through his attorneys of record, the law firm of Black & LoBello, and for cause of action against the above-named Defendants hereby complains and alleges as follows:

## PARTIES

1. At all relevant times, Plaintiff, Richard Chudacoff, M.D. was and is a United States citizen who was domiciled in the State of Nevada.

2. At all relevant times herein, Defendant University Medical Center of Southern Nevada, is a political subdivision of Clark County, State of Nevada.

3. At all relevant times herein, Defendant Commissioner Rory Reid, is an a resident of the State of Nevada, and served as a County Commissioner with oversight obligations over the policies and procedures of Defendant University Medical Center of Southern Nevada.

4. At all relevant times herein, The Medical and Dental Staff of the University Medical Center of Southern Nevada (the "Medical Staff"), is a separate subdivision of Defendant University Medical Center of Southern Nevada.

5. Upon information and belief, Defendant Kathleen Silver is a resident of the State of Nevada, and at all times relevant herein was an employee of the Defendant University Medical Center of Southern Nevada.

6. Upon information and belief, Defendant Brian Brannman is a resident of the State of Nevada, and at all times relevant herein was an employee of the Defendant University Medical Center of Southern Nevada.

7. Upon information and belief, Defendant John Ellerman, M.D., is a resident of the State of Nevada, and at all times relevant herein was an employee of the Defendant University

2

1    Medical Center of Southern Nevada.

2    8.    Upon information and belief, Defendant Dale Carrison, M.D., is a resident of the State of
3
4          Nevada, and at all times relevant herein was an employee of the Defendant University
5          Medical Center of Southern Nevada.

6    9.    Upon information and belief, Defendant Marvin J. Bernstein, M..D., is a resident of the State
7
8          of Nevada, and at all times relevant herein was an employee of the Defendant University
9          Medical Center of Southern Nevada.

10   10.   Upon information and belief, Defendant Donald Roberts, M.D., is a resident of the State of
11         Nevada, and at all times relevant herein was an employee of the Defendant University
12
13         Medical Center of Southern Nevada.

14   11.   The true names and capacities, whether individual, corporate, associate, or otherwise, of
15         DOE Defendants I through X and ROE CORPORATIONS A through Z are unknown to
16         Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed
17
18         and believes, and on that basis alleges, that each of the Defendants designated as DOE
19         Defendants and ROE CORPORATIONS are responsible in some manner for the events and
20         occurrences referenced in this Complaint, and/or owes money to Plaintiff and/or may be
21         affiliated with one of the other Defendants or may claim some interest in the subject matter
22         of this Complaint. Plaintiff will ask leave of the Court to amend this Complaint and insert
23
24         the true names and capacities of DOE Defendants I through X and ROE CORPORATIONS
25         A through Z when the identities of the same have been ascertained, and to join said
26         Defendants in this action.

27   12.   The acts performed by representatives of Defendants University Medical Center of Southern
28

3

Nevada and the Medical Staff, whether such representatives have been individually named herein as a defendant, or are yet to be identified, were all ones which those representatives had the actual and/or apparent authority to perform, may have been within the scope of their employment, were of the kind they were authorized to perform, and were actuated at least in part by a desire to serve their employers, and therefore the entity defendants are liable for their acts pursuant to the doctrine of respondent superior.

## JURISDICTION AND VENUE

13. All of the acts complained of herein occurred in Clark County, Nevada.

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as the matter in controversy alleges, in part, that the Defendants violated the U.S. Constitution.

15. Venue is properly conferred on this Court pursuant to 28 U.S.C. § 1391 (b) because the Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claims alleged herein took place in this District.

## GENERAL ALLEGATIONS

16. Plaintiff graduated from medical school in 1989.

17. Plaintiff is licensed to practice medicine by the National Board of Medical Examiners, the Texas State Board of Medical Examiners, the Medical Board of California and the State of Nevada Board of Medical Examiners.

18. Plaintiff is certified in the specialities of Obstetrics and Gynecology from the American Board of Obstetrics and Gynecology.

19. After finishing his service in the U.S. Naval Medical Corps in 1995 as a Resident and then Attending Physician, Plaintiff established a private practice in Houston, Texas.

4

20.     From 2000 until 2007, in addition to his private practice, Plaintiff was a Clinical Assistant Professor for Baylor College of Medicine in Houston Texas.

21.     As a Clinical Assistant Professor, Plaintiff taught, precepted and monitored hundreds of residents in routine and advanced obstetrical and gynecological surgeries and procedures.

22.     In addition to his private practice and professorship, Plaintiff has traveled the United States lecturing and proctoring physicians on behalf of various organizations and companies, including Johnson & Johnson's Women's Health Division and Intuitive Surgical.

23.     Plaintiff came to Las Vegas, Nevada in or about February 2007, to develop an advanced new technology and treatment modalities which uses minimally invasive and non-invasive surgical techniques for treating gynecological issues.

24.     When Plaintiff moved his practice to Las Vegas, Nevada, he sought privileges at numerous local hospitals including University Medical Center of Southern Nevada.

25.     In 2007, Plaintiff was appointed as an Assistant Professor with the University of Nevada School of Medicine.

26.     On or about December 20, 2007, Plaintiff was granted staff privileges at Defendant University Medical Center of Southern Nevada as part of the Department of Obstetrics and Gynecology.

27.     From December 20, 2007 through May 28, 2008, Plaintiff worked at the University Medical Center of Southern Nevada.   During this time, Plaintiff providing clinical care and educational services within the Department of Obstetrics and Gynecology, with the understanding that there were no concerns about his clinical care or skill.

28.     Plaintiff did see substantial adverse differences in the skills of the residents he oversaw at

5

University Medical Center of Southern Nevada from the skills of the residents he previously oversaw at Baylor Medical Center in Houston, Texas.

29. As a result of less developed skills than what Plaintiff expected from similarly situated residents, Plaintiff observed residents experience expected but preventable surgical complications during gynecological procedures. In all such cases, once discovered, Plaintiff, or other attending physicians who were on duty at such times, appropriately assisted in the treatment of such complications.

30. On or about April 16, 2008, Plaintiff wrote a long email to Paul G. Stumpf, M.D., Professor and Chair of Obstetrics & Gynecology, University of Nevada School of Medicine and Immediate Past Chair, Committee on Patient Safety and Quality Improvement, American College of Obstetricians and Gynecologists, as a formalization of numerous conversations we had regarding is concerns over the skills of the obstetrical and gynecological residents at University Medical Center of Southern Nevada and making several recommendations for improving the quality of care provided by the residents.

31. On May 28, 2008, Plaintiff received a two-page correspondence from Defendant John A. Ellerton, M.D., CM FACP, Chief of Staff at UMC, in which Plaintiff was told that the Medical Executive Committee of Defendant Medical Staff had suspended, altered or modified his medical staff privileges and were making other requests of him, such as requiring Plaintiff to undergo drug testing and physical and mental examinations.

32. Plaintiff had no prior discussions with Defendant Ellerton or any other representatives from Defendant Medical Staff or Defendant University Medical Center of Southern Nevada that the Medical Staff was considering altering of changing his privileges at University Medical

Center of Southern Nevada.

33.   In the May 28, 2008 letter, Plaintiff was advised that pursuant to the Medical Staff Bylaws, he was entitled to a Fair Hearing. He was not advised of the allegations presented against him or who had made those allegations against him in this correspondence.

34.   In response, Plaintiff, by and through his malpractice insurance carrier, retained counsel (not counsel submitting this complaint).

35.   On June 2, 2008, Plaintiff's insurance counsel sent correspondence to UMC's counsel, Mr. Brad Ballard, Esq., advising that the action taken by UMC would adversely impact Plaintiff's career and privileges. It also advised that the correspondence from the Medical Executive Committee did not allow him an opportunity to respond to the allegations or otherwise address the allegations prior to the action being taken. At that time, a Fair Hearing and all pertinent records were requested by Plaintiff's insurance counsel.

36.   The June 2, 2008 letter also requested that no information be disseminated until the Fair Hearing took place and Plaintiff had an opportunity to respond or explain the allegations against him as provided for in the Bylaws, Credentialing Manual and Fair Hearing procedures.

37.   On or about June 10, 2008, Plaintiff received a letter from University of Nevada, Reno President Milton Glick stating that his employment as a professor with the University of Nevada School of Medicine had been terminated as a result of the suspension of Plaintiff's clinical privileges at University Medical Center of Southern Nevada.

38.   On or about June 16, 2008, Defendants filed a report with the National Practitioner Data Bank that stated that Plaintiff's privileges had been suspended indefinitely for "substandard

or inadequate care" and "substandard or inadequate skill level."

39. In its report to the National Practitioner Data Bank, Defendants cited four cases where Plaintiff allegedly caused four (4) "serious operative complications during gynecological surgery," one incident of a failure to respond to a medical emergency, and numerous complaints of disruptive physician behavior.

40. Prior to the report to the National Practitioner Data Bank, Plaintiff had no knowledge of the nature of the alleged misconduct.

41. On or about June 18, 2008, Plaintiff was notified that a hospital from whom he was seeking temporary privileges for purposes of proctoring and teaching had denied him privileges as a result of his suspension at University Medical Center of Southern Nevada.

42. On or about June 20, 2008, Plaintiff was notified by Intuitive Surgical, a private medical device company, that he could no longer serve as a proctor because of information the company received from the National Practitioner Data Base.

43. On or about June 23, 2008, Plaintiff finally received the Medical Record numbers for the patients whose cases the Defendants are claiming Plaintiff caused medical errors.

44. Despite numerous requests, as of the date of this Complaint, Plaintiff has not been provided with copies of the medical records for the disputed cases.

45. Despite reviewing his personal files, Plaintiff cannot identify the alleged surgical complications, has no record of a failure to respond, and has no recollection of any disruptive physician complaints.

46. Plaintiff does recall two (2) incidents where patients experienced surgical complications while residents who he was overseeing and proctoring were operating; however, such

complications are expected in laproscopic gynecological surgeries and were identified and remedied by Plaintiff or another attending physician without any known long term disability or damage to the patient.

47.   Although it has been a month since a fair hearing was requested, Defendants have made no effort to discuss a time for such a hearing with Plaintiff or his counsel.

48.   According to Article XII.A.1.a) of the Medical Staff's Bylaws, a suspension of clinical privileges is within the definition of an adverse action and accordingly, Plaintiff is afforded certain procedures and rights with respect to how such adverse action is effectuated.

49.   The Fourteenth Amendment to the U.S. Constitution secures certain rights, such as the right to due process, for U.S. citizens.

50.   As such, a suspension of clinical privileges may only be limited or revoked after proper due process has been afforded the physician, instilling a Fourteenth Amendment protected property right in the Plaintiff's clinical privileges.

51.   Article XI.B. of the Medical Staff's Bylaws states that all routine administrative actions are to be taken in accordance with the Credentialing Manual for the Medical Staff.

52.   Article VI. of the Credentialing Manual states that all routine actions must be initiated by a written complaint to the Medical Executive Committee.

53.   Upon review of the written complaint, the Medical Executive Committee, pursuant to Article VI.3. of the Credentialing Manual, may make several different recommendations; any routine adverse action, however, may only occur once either the physician fails to request a fair hearing in the appropriate time, or after a fair hearing is conducted.

54.   Plaintiff continues to suffer substantial economic and reputational harm as a result of the

9

Defendants' actions.

## FIRST CAUSE OF ACTION

## CONSTITUTIONAL VIOLATION

**(Violation of Fourteenth Amendment against all Defendants)**

55. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

56. The Fourteenth Amendment to the U.S. Constitution secures certain rights, such as the right to due process, for U.S. citizens.

57. As medical staff privileges have been recognized to be a property interest protected by the Fourteenth Amendment, particularly when they may only be limited or revoked after a hearing, Defendants had a duty to ensure that Plaintiff's property interests were not impeded without due process.

58. Article XII.A.1.a) of the Medical Staff's Bylaws includes a suspension of clinical privileges within the definition of an adverse action and provides detailed procedures for how such actions are to occur.

59. As such, a suspension of clinical privileges may only be limited or revoked after proper due process has been afforded the physician, instilling a Fourteenth Amendment protected property right in the Plaintiff's clinical privileges.

60. Article XI.B. of the Medical Staff's Bylaws states that all routine administrative actions are to be taken in accordance with the Credentialing Manual for the Medical Staff.

61. Article VI. of the Credentialing Manual states that all routine actions must be initiated by a written complaint to the Medical Executive Committee.

62. Upon review of the written complaint, the Medical Executive Committee, pursuant to Article VI.3. of the Credentialing Manual, may make several different recommendations; any adverse action, however, may only occur once either the physician fails to request a fair hearing in the appropriate time, or after a fair hearing is conducted.

63. As such, as Plaintiff's privileges were suspended without notice to him or without the opportunity for a fair hearing, Plaintiff's privileges were a taking of a property right in violation of the Fourteenth Amendment of the U.S. Constitution.

64. There is one situation where the Bylaws permit a suspension or revocation of clinical privileges; according to the Medical Staff's Bylaws, Article XI, the only time immediate adverse action shall be taken to suspend or revoke clinical privileges shall be when such action is necessary to preserve life or "reduce the substantial likelihood of injury or health of a patient" or staff at the hospital.

65. To date, Defendants have not alleged or suggested to Plaintiff that he was an immediate threat to life or health; thus, this exception either (i) does not justify Defendant's acts against Plaintiff, or (ii) was inappropriately used to justify the Defendants' acts. In either case, Defendants' conduct constitutes a violation of the Plaintiff's property rights.

66. The Defendants deprived the Plaintiff of the full and equal benefit of all laws and proceedings for the security of property as are enjoyed by medical staff privileges, in violation of Fourteenth Amendment of the U.S. Constitution.

67. The Plaintiff has been damaged, both economically and professionally, as a direct and proximate result of the Defendants' actions.

68. Defendants' actions were willful, wanton, reckless, and malicious, and further show a

11

the Fair Hearing is complete and an accurate report can be made, if one would even be necessary.

73. According to the Bylaws, Credentialing Manual and Fair Hearing procedure, Defendants should be required to confront Plaintiff with allegations of his alleged misconduct and their recommendations for adverse action with respect to his clinical privileges and provide him the opportunity to request a Fair Hearing before any routine adverse action is taken and this Court should issue a mandatory injunction requiring Defendants to reverse the suspension, alteration or modification of Plaintiff's clinical privileges, provide Plaintiff with a listing of the allegations and a copy of the Medical Executive Committee's recommendations and give the Plaintiff an opportunity to request a Fair Hearing on the matter.

74. A declaration of rights, responsibilities, and obligations of Plaintiff and Defendants are essential to determine the respective rights and obligations of the parties hereto, including a declaration that the Defendants should not have taken action to suspend his clinical privileges in the manner which they have, should abide by the Bylaws, Credentialing Manual, Fair Hearing procedure and other governing documents and provide him a speedy Fair Hearing, and should withdraw the National Practitioner Data Bank report until such time when the Fair Hearing is complete and an accurate report can be made, if one would even be necessary.

75. Plaintiff has no other adequate or speedy remedy at law.

76. Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

13

### THIRD CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing against all Defendants)**

77. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

78. There is an implied covenant of good faith and fair dealing in every contract in Nevada.

79. The Defendant's Bylaws, Credentialing Manual and other governing documents create a contract, insomuch as each party agrees to abide by the terms contained therein.

80. Defendants had a duty to follow the Bylaws, Credentialing Manual and other governing documents in their treatment of Plaintiff's privileges.

81. Defendants failed to follow the procedures set forth in the Defendants' Bylaws, Credentialing Manual and other governing documents when they suspended Plaintiff's privileges.

82. Despite numerous requests for documents and evidence related to the suspension of the Plaintiff's clinical privileges, Defendants failed to follow the procedures set forth in the Defendants' Bylaws, Credentialing Manual and other governing documents by not cooperating with such requests.

83. Despite numerous requests for a Fair Hearing, Defendants failed to follow the procedures set forth in the Defendants' Bylaws, Credentialing Manual and other governing documents by not promptly scheduling or conducting a Fair Hearing.

84. Defendants' breach of the covenant of good faith and fair dealing was the direct and proximate cause of the injuries the Plaintiff has sustained and is continuing to sustain.

85. Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the rights of the

14

Plaintiff. The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the plaintiff for mental anguish, humiliation, and outrage that the Plaintiff has suffered due to the Defendant's conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

86.  Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## FOURTH CAUSE OF ACTION

### (Negligence against All Defendants)

87.  Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

88.  Defendants had a duty of care to act reasonably and follow the Bylaws, Credentialing Manual and other governing documents in their treatment of Plaintiff's privileges.

89.  Defendants failed to follow the procedures set forth in the Defendants' Bylaws, Credentialing Manual and other governing documents when they suspended Plaintiff's privileges, thereby breaching their duty to Plaintiff.

90.  Defendants breach of their duties as set forth in the Bylaws, Credentialing Manual and other governing documents, was the direct and proximate cause of the injuries the Plaintiff has sustained and is continuing to sustain.

91.  As a direct and proximate result of the Defendant's negligence the Plaintiff has been damaged in an amount to be proven at trial.

92.  Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this

15

action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## FIFTH CAUSE OF ACTION

### (Defamation against all Defendants)

93. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

94. Defendants accused Plaintiff of having inadequate skill and care as a physician and surgeon by suspending, altering or modifying his clinical privileges at University Medical Center of Souther Nevada.

95. The accusations that the Plaintiff caused the surgical complications are false, as he neither caused them nor were they serious.

96. The accusations that the Plaintiff failed to respond to a medical emergency are false.

97. Defendants published the remarks to third parties, by making it publicly known that his clinical privileges have been altered, suspended or modified by making public statements as such to third parties, with knowledge of the falsity of the statements or in a reckless disregard of their truth or falsity.

98. The publication was not privileged.

99. The publication of these remarks has resulted in damages to the Plaintiff's reputation in the community, including, but not limited to:

    (a)    emotional distress;

    (b)    loss of employment and loss of future employment;

    (c)    harm to professional character;

16

(d)     humiliation and embarrassment;

(e)     sleeplessness and anxiety;

(f)     other damages as may arise during the course of discovery.

100.   As a direct and proximate result of the Defendant's acts the Plaintiff has been damaged in an amount to be proven at trial.

101.   Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for, the rights of the Plaintiff. The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the plaintiff for mental anguish, humiliation, and outrage that the Plaintiff has suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

102.   Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## SIXTH CAUSE OF ACTION

**(Defamation Per Se against Defendant University Medical Center of Southern Nevada and Defendant Medical Staff)**

103.   Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

104.   Defendants accused Plaintiff of having inadequate skill and care as a physician and surgeon by claiming he was the cause of numerous serious surgical complications in its report to the National Practitioner Data Base.

17

105. Defendants stated in their report to the National Practitioner Data Base that the Plaintiff was indefinitely suspended.

106. The accusations that the Plaintiff caused the surgical complications are false, as he neither caused them nor were they serious.

107. The accusations that the Plaintiff's privileges were indefinitely suspended were false as according their the May 28, 2008 letter from Defendant Ellerton, Plaintiff may still practice under certain conditions and any suspension cannot be indefinite without the completion of a fair hearing.

108. Defendants published the remarks to third parties, by and through the National Practitioner Data Base, with knowledge of the falsity of the statements or in a reckless disregard of their truth or falsity.

109. The publication was not privileged.

110. The publication of these remarks has resulted in damages to the Plaintiff's reputation in the community, including, but not limited to:

    (a)    emotional distress;

    (b)    loss of employment and loss of future employment;

    (c)    harm to professional character;

    (d)    humiliation and embarrassment;

    (e)    sleeplessness and anxiety;

    (f)    other damages as may arise during the course of discovery.

111. As a direct and proximate result of the Defendant's acts the Plaintiff has been damaged in an amount to be proven at trial.

112. Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for, the rights of the Plaintiff. The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the plaintiff for mental anguish, humiliation, and outrage that the Plaintiff has suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

113. Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## SEVENTH CAUSE OF ACTION

### (Libel against all Defendants)

114. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

115. Defendants accused Plaintiff of having inadequate skill and care as a physician and surgeon by suspending, altering or modifying his clinical privileges at University Medical Center of Souther Nevada.

116. The accusations that the Plaintiff caused the surgical complications are false, as he neither caused them nor were they serious.

117. The accusations that the Plaintiff failed to respond to a medical emergency are false.

118. Defendants made a written report to the National Practitioner Data Base, which made it publicly known through such report that Plaintiff's clinical privileges have been altered, suspended or modified, with knowledge of the falsity of the statements or in a reckless

1    disregard of their truth or falsity.

2    119.   The publication was not privileged.

3
4    120.   The publication of these remarks has resulted in damages to the Plaintiff's reputation in the

5           community, including, but not limited to:

6           (a)   emotional distress;

7
            (b)   loss of employment and loss of future employment;
8
9           (c)   harm to professional character;

10          (d)   humiliation and embarrassment;

11          (e)   sleeplessness and anxiety;

12
            (f)   other damages as may arise during the course of discovery.
13
14   121.   As a direct and proximate result of the Defendant's acts the Plaintiff has been damaged in an

15          amount to be proven at trial.

16   122.   Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this

17          action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010,
18
            Federal Rule of Civil Procedure 54 and all other applicable law.
19
20                                **EIGHTH CAUSE OF ACTION**

21                              **(Slander against all Defendants)**

22
     123.   Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they
23
24          were fully set forth herein.

25   124.   Defendants accused Plaintiff of having inadequate skill and care as a physician and surgeon

26          by suspending, altering or modifying his clinical privileges at University Medical Center of

27          Souther Nevada.
28

                                            20

125. The accusations that the Plaintiff caused the surgical complications are false, as he neither caused them nor were they serious.

126. The accusations that the Plaintiff failed to respond to a medical emergency are false.

127. Through communications with third parties, including, without limitation, Medical Staff members and employees at University Medical Center of Southern Nevada and other health care institutions, the identities of whom shall be made known through Discovery, Defendants made it publicly known that Plaintiff's clinical privileges have been altered, suspended or modified, with knowledge of the falsity of the statements or in a reckless disregard of their truth or falsity.

128. The publication was not privileged.

129. The publication of these remarks has resulted in damages to the Plaintiff's reputation in the community, including, but not limited to:

    (a)    emotional distress;

    (b)    loss of employment and loss of future employment;

    (c)    harm to professional character;

    (d)    humiliation and embarrassment;

    (e)    sleeplessness and anxiety;

    (f)    other damages as may arise during the course of discovery.

130. As a direct and proximate result of the Defendant's acts the Plaintiff has been damaged in an amount to be proven at trial.

131. Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010,

Federal Rule of Civil Procedure 54 and all other applicable law.

## NINTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress against all Defendants)

132. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

133. The Defendants above alleged conduct in suspending Plaintiff's clinical privileges and publicizing of such through its report to the National Practitioner Data Base was a deviation from reasonable standards of conduct, for which, such behavior, if done in an improper or unsubstantiated manner, would be foreseeable to could cause emotional distress.

134. As a direct result of the Defendants extreme and outrageous conduct toward Plaintiff by blatantly disregarding the procedures set forth in the Bylaws, Credentialing Manual and Fair Hearing procedure which they had a duty to follow and making blatantly false statements to a national clearinghouse and publisher of professional information, Plaintiff has suffered severe emotional distress.

135. As a direct result of the Defendants' extreme and outrageous conduct, Plaintiff has experienced physical manifestations of his emotional distress and mental anguish including, but not limited to, insomnia, anxiety and loss of appetite.

136. Plaintiff has begun seeing a mental health professional for the treatment of his physical manifestations of his emotional distress.

137. As such, the Plaintiff is entitled to recover monetary damages from the Defendants, representing fair and reasonable compensation for the emotional distress suffered by the Plaintiff as a result of the wrongful conduct alleged herein above in an amount to be proven

1    with specificity at trial.

2    138.  Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this
3
4          action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010,
5          Federal Rule of Civil Procedure 54 and all other applicable law.

6                                    **TENTH CAUSE OF ACTION**

7               **(Intentional Infliction of Emotional Distress against all Defendants)**
8
9    139.  Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were
10         fully set forth herein.

11   140.  The Defendants above alleged conduct in suspending Plaintiff's clinical privileges and
12
13         publicizing of such through its report to the National Practitioner Data Base was extreme,
14         outrageous, and egregious and an extreme deviation from reasonable standards of conduct.

15   141.  As a direct result of the Defendants extreme and outrageous conduct toward Plaintiff by
16         blatantly disregarding the procedures set forth in the Bylaws, Credentialing Manual and Fair
17
18         Hearing procedure which they had a duty to follow and making blatantly false statements to
19         a national clearinghouse and publisher of professional information, Plaintiff has suffered
20         severe emotional distress.

21   142.  As a direct result of the Defendants' extreme and outrageous conduct, Plaintiff has
22
23         experienced physical manifestations of his emotional distress and mental anguish including,
24         but not limited to, insomnia, anxiety and loss of appetite.

25   143.  Plaintiff has begun seeing a mental health professional for the treatment of his physical
26         manifestations of his emotional distress.

27   144.  As such, the Plaintiff is entitled to recover monetary damages from the Defendants,
28

                                            23

representing fair and reasonable compensation for the emotional distress suffered by the Plaintiff as a result of the wrongful conduct alleged herein above in an amount to be proven with specificity at trial.

145. Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for, the rights of the Plaintiff. The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the plaintiff for mental anguish, humiliation, and outrage that the Plaintiff has suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

146. Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## ELEVENTH CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Advantages against all Defendants)**

147. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

148. In addition to his private practice, Plaintiff was hired by University of Nevada School of Medicine, a third party, as an Assistant Professor, and traveled the United States lecturing and proctoring physicians on behalf of various third party organizations and companies, including, for example, but not as an all-inclusive list, Johnson & Johnson's Women's Health Division and Intuitive Surgical.

149. Defendants were aware of Plaintiff's relationships with some, if not all, of these third parties

24

1      and that the relationship was economic in nature.

2  150.   The Defendants knew or should have known that if they did not act with due care their
3          administration of the Plaintiff's clinical privileges, such acts would interfere with Plaintiff's
4
5          relationships with these third parties and cause Plaintiff to lose in whole or in part the
6          probable future economic benefit or advantage of such relationships.

7  151.   The Defendants above alleged conduct in suspending Plaintiff's clinical privileges and
8          publicizing of such through its report to the National Practitioner Data Base was extreme,
9
10         was a failure to exercise due care, if not an outrageous, and egregious and an extreme
11         deviation from reasonable standards of conduct.

12  152.   The failure to exercise due care by the Defendants caused Plaintiff economic damage,
13          namely, these third party relationships have been interfered with or disrupted, as Plaintiff's
14
15          professorship with the University of Nevada School of Medicine has been terminated and
16          various scheduled and tentative proctorships with Intuitive Surgical have been cancelled
17          causing Plaintiff to loose in whole or in part the economic benefits or advantage from these
18
19          relationships.

20  153.   As such, the Plaintiff is entitled to recover monetary damages from the Defendants,
21          representing fair and reasonable compensation for the loss of the economic benefits or
22
23          advantages suffered by the Plaintiff as a result of the wrongful conduct alleged herein above
24          in an amount to be proven with specificity at trial.

25  154.   Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this
26          action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010,
27          Federal Rule of Civil Procedure 54 and all other applicable law.
28

## TWELFTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantages against all Defendants)**

155. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

156. In addition to his private practice, Plaintiff was hired by University of Nevada School of Medicine, a third party, as an Assistant Professor, and traveled the United States lecturing and proctoring physicians on behalf of various third party organizations and companies, including, for example, but not as an all-inclusive list, Johnson & Johnson's Women's Health Division and Intuitive Surgical.

157. Defendants were aware of Plaintiff's relationships with some, if not all, of these third parties and that the relationship was economic in nature.

158. The Defendants knew that a suspension of Plaintiff's clinical privileges would interfere with Plaintiff's relationships with these third parties and cause Plaintiff to lose in whole or in part the probable future economic benefit or advantage of such relationships.

159. The Defendants initiated various acts, including, without limitation, suspending Plaintiff's clinical privileges and publicizing of such through its report to the National Practitioner Data Base in an intentional and extreme manner, directly in violation of the Bylaws, Credentialing Manual, Fair Hearing procedure and other governing documents, an outrageous, and egregious and an extreme deviation from reasonable standards of conduct.

160. As a result of such intentional outrageous and egregious acts, Defendants caused Plaintiff economic damage, namely, these third party relationships have been interfered with or disrupted, as Plaintiff's professorship with the University of Nevada School of Medicine has

26

been terminated and various scheduled and tentative proctorships with Intuitive Surgical have been cancelled causing Plaintiff to loose in whole or in part the economic benefits or advantage from these relationships.

161.   As such, the Plaintiff is entitled to recover monetary damages from the Defendants, representing fair and reasonable compensation for the loss of the economic benefits or advantages suffered by the Plaintiff as a result of the wrongful conduct alleged herein above in an amount to be proven with specificity at trial.

162.   Defendants' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for, the rights of the Plaintiff. The Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount to compensate the plaintiff for mental anguish, humiliation, and outrage that the Plaintiff has suffered due to the Defendants' conduct and to deter Defendants' and other organizations and individuals from like conduct in the future.

163.   Plaintiffs have been required to retain the law firm of Black & LoBello to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

### ATTORNEY FEES

As a result of the Defendants' actions as set forth above, Plaintiff has been required to retain the law firm of Black & LoBello, to prosecute this action and has incurred and will continue to incur costs and attorney fees for which the Plaintiff is entitled to a separate award pursuant to N.R.S 18.010, as well as any other applicable statute or rule, in an amount to be determined by the Court.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

1.   For an order causing Defendants to withdraw their suspension of the Plaintiff's clinical privileges until a Fair Hearing has been completed and only to reinstate such suspension if the results therefrom warrant a suspension;

2.   For an order causing Defendants to withdraw their report submitted to the National Practitioner Data Bank;

3.   For a declaration of rights, responsibilities, and obligations of Plaintiff and Defendants, including a declaration that the Defendants should not have taken action to suspend his clinical privileges in the manner which they have, should abide by the Bylaws, Credentialing Manual, Fair Hearing procedure and other governing documents and provide him a speedy Fair Hearing, and should withdraw the National Practitioner Data Bank report until such time when the Fair Hearing is complete and an accurate report can be made, if one would even be necessary;

4.   For an order requiring Defendants to adhere to the procedures in their Bylaws, Credentialing Manual, Fair Hearing procedure and other governing documents;

5.   For an order requiring Defendants to speedily turn over all materials related to the suspension of Plaintiff's clinical privileges to Plaintiff and Plaintiff's counsel so that they can adequately prepare for the Fair Hearing;

6.   For an order requiring Defendants to speedily conduct a proper Fair Hearing according to the Fair Hearing procedure;

7.   For an injunction preventing Defendants from making any future reports to the National Practitioner Data Bank until such time when the Defendants have completed a fair hearing and the results of the fair hearing warrant such a report, if any;

8.   For a judgment for the Plaintiff for all money damages available in a sum to be determined trial;

9.   For an award of attorney fees to the Plaintiff for his reasonable attorney's fees, court costs and necessary disbursements incurred in connection with this lawsuit; and,

10.  For such other and further relief as the Court deems just and equitable.

DATED this 2nd day of July, 2008.

BLACK & LOBELLO

By: _____
Jacob L. Hafter, Esq.
Nevada Bar Number 9303
10777 W. Twain Avenue, Suite 300
Las Vegas, Nevada 89135
Attorneys for Plaintiff

29