1
2
3
4                     **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
5
6
7
   RICHARD CHUDACOFF, M.D.,          )      2:08-cv-00863-ECR-RJJ
8                                    )
         Plaintiff,                  )
9                                    )
   vs.                               )      **Order**
10                                   )
   UNIVERSITY MEDICAL CENTER; et al., )
11                                   )
         Defendants.                 )
12                                   )
   _____  )
13

14        **I. Motion to Strike Fourth Amended Complaint (#346)**

15        On January 23, 2012, Defendants Ellerton, Bernstein, Carrison,

16   Roberts, and the Medical and Dental Staff filed a "Motion to Strike

17   Plaintiff's Fourth Amended Complaint" (#346).  On January 24, 2012,

18   Plaintiff filed a response (#347), and Defendants UMC, Brager,

19   Collins, Giunchigliani, Maxfield, Reid, Weekly, and Woodbury,

20   collectively the "Board of Trustees", filed a Joinder (#348) to the

21   Motion to Strike (#346).  On February 2, 2012, Defendants Bernstein,

22   Carrison, Ellerton, Roberts, and the Medical and Dental Staff,

23   collectively the "Doctor Defendants," filed their reply (#351).

24   Specifically, Defendants object to the reference to DOE Defendants

25   in the caption after our previous ruling (#340) that Plaintiff is

26   ordered to file a fourth amended complaint removing any reference to

27   DOE Defendants.

28

Plaintiff responds that our previous Order (#340) disallowed only the opportunity for Plaintiff to name the DOE Defendants who are additional voting members of the MEC, and that DOE Defendants are only mentioned in the Fourth Amended Complaint (#343) in the caption and in a boilerplate paragraph reserving the right to add additional defendants should the need arise.

In federal court, "the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, when the identity of alleged defendants will not be known prior to the filing of a complaint, a plaintiff may identify unknown defendants through discovery. Id. At this stage in the litigation, especially after Plaintiff claims to have discovered the identity of the voting members of the MEC, Plaintiff has shown no other bases on which to include DOE Defendants in a fourth amended complaint filed four years into the action. Therefore, the reference to DOE Defendants should be removed entirely. The Court shall allow Plaintiff the opportunity to file a fifth amended complaint in compliance with this Order, which must omit any mention of John Doe defendants.

Defendants also request sanctions. They argue that Plaintiff's refusal to follow the Court's orders have forced Defendants to file multiple motions, expending time and money. The request for sanctions shall be denied, because the inclusion of DOE Defendants in the caption and in a boilerplate paragraph, as well as factual allegations relating to Plaintiff's falsification of application materials, do not yet rise to the required level of misconduct.

## II. Motion for Reconsideration (#350)

On February 9, 2012, Plaintiff filed a Motion for
Reconsideration (#350) of our Order (#340), requesting that we
reconsider our denial of Plaintiff's request to add additional
defendants to this action.  Plaintiff wishes to add "newly
identified people who participated in the deprivation of his due
process rights by voting to suspend his clinical privileges at UMC,
despite the fact that he had no notice or opportunity to be heard."
(Pl.'s Mot. for Reconsideration at 4 (#350).)  On February 9, 2012,
Defendants Bernstein, Carrison, Ellerton, Roberts, and the Medical
and Dental Staff filed an opposition (#353).

A district court may reconsider an order if the court (1) is
presented with newly discovered evidence, (2) committed clear error
or the initial decision was manifestly unjust, or (3) if there is an
intervening change in controlling law.  Sch. Dist. No. 1J, Multnomah
Cty, Or. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

In our Order (#340), we stated simply that voting alone is not
enough to show wrongful deprivation of Plaintiff's rights.  In doing
so, we did not properly take into account our previous finding that
the MEC's act of suspending Plaintiff's privileges without notice or
opportunity to be heard was a violation of Plaintiff's
constitutional rights.  While we noted previously that it is unclear
whether the MEC had the authority to do so under its Bylaws, as the
Bylaws suggest only that the MEC may recommend restricting a
physician's privileges, not actually act to restrict them, we cannot
deny that the Court incorrectly denied Plaintiff's request to add
the other voting members of the MEC on the basis that simply voting

3

1  is not enough.  However, it is still troubling to the Court that
2  defendants who merely voted at the presentation of the complaints
3  and/or evidence against Plaintiff, possibly without the knowledge of
4  whether Plaintiff had been given notice beforehand, might be added
5  as defendants to a case which has been litigated for years, with a
6  prior decision on whether those acts were unconstitutional.  In the
7  original Motion (#338) in which Plaintiff sought to add these
8  defendants, Plaintiff alleged that he was unable to learn the
9  identity of the other members of the MEC December 9, 2011 because of
10  Defendants' previous refusal to provide the minutes from the
11  meetings of the MEC.  This disclosure was made so late in the
12  litigation because Defendants had been claiming peer review
13  privilege, which we ruled does not apply in federal § 1983 actions.

14      Despite our concerns, we agree with Plaintiff that we
15  incorrectly denied Plaintiff the opportunity to add defendants who
16  participated in the restriction of his privileges, and because
17  Plaintiff has stated that he was unable, until now, to determine the
18  identity of those defendants, we shall grant Plaintiff the chance to
19  file a complaint in which those defendants are named, and references
20  to DOE defendants are removed.

21

22          **III. Joint Motion to Extend Discovery (#355)**

23      On February 10, 2012, Defendants Bernstein, Brager, Carrison,
24  Collins, Ellerton, Giunchigliani, Maxfield, Reid, Roberts, the
25  Medical and Dental Staff, and UMC filed a "Joint Motion to Extend
26  Discovery" (#355).  On February 14, 2012, Plaintiff filed a response
27
28                                   4

1  (#360).  On February 24, 2012, the moving Defendants filed a reply
2  (#361).

3      Discovery was initially reopened until February 21, 2012.
4  Defendants request that we reopen discovery because Plaintiff
5  submitted last minute disclosures, and because there are several
6  discovery motions pending.  In light of our Order adding additional
7  defendants and allowing Plaintiff to add a new cause of action, we
8  shall reopen discovery for a term of sixty days, with the
9  possibility of extension upon motion if necessary due to the
10 additional defendants.

11

12              **IV. Motion for Sanctions (#356)**

13     On February 13, 2012, Plaintiff filed a Motion for Sanctions
14 (#356).  On March 1, 2012, the Doctor Defendants filed a response
15 (#371).  On March 5, 2012, Plaintiff filed a reply (#385).

16     On June 15, 2011, we entered an Order (#257) approving a
17 stipulation in which the parties agreed that Defendants should
18 notify the National Practitioner Data Bank ("NPDB") to void any and
19 all entries related to or involving Plaintiff filed by UMC between
20 the period of May 27, 2008 through June 15, 2011 by June 17, 2011.
21 The NPDB allows for the voiding of a previous report by the
22 reporting entity at any time.  (NPDB Guidebook, Ex. C at 18 (#132-
23 2).) When the NPDB processes a Void, a retraction of a report in its
24 entirety, a "Report Revised, Voided, or Status Changed" document is
25 mailed to the subject and all queriers who received the previous
26 version of the report within the past 3 years."  (Id.)  The initial
27 report was dated June 17, 2008.  It is due to this approaching

28                              5

three-year anniversary that the Court so hastily approved the
stipulation that required the Doctor Defendants to void the report
by June 17, 2011.

In his Motion (#356), Plaintiff claims that after having
difficulty finding employment, he discovered that the initial report
was never voided from the NPDB system through a self query.
Plaintiff argues that the Doctor Defendants' failure to query the
NPDB and to keep track of the reports they filed against Plaintiff
were violations of our Order (#257).  Plaintiff alleges that the
Doctor Defendants' failure to void the reports have prevented him
from finding new employment and have impacted his personal
relationship with his family, and requests that he be awarded $1,000
per day from June 15, 2011, the date of our Order (#257) to the day
the award is paid, to compensate him for his actual loss, a number
"indicative of the amount that Dr. Chudacoff was receiving in his
locum tenens position at Visalia Health Care Clinic, which was
terminated."  (Pl.'s Mot. for Sanctions at 10 (#356).)  Plaintiff
also seeks attorney's fees for bringing this Motion (#356).

The Doctor Defendants respond that any oversight in voiding the
NPDB reports was accidental.  The Doctor Defendants state that there
were two NPDB reports generated by UMC for Plaintiff, Report #1 and
Report #2, and Report #1 was revised after initial submission.  The
Doctor Defendants state that although they had until June 17, 2011
to void the reports pursuant to our Order (#257), they took action
immediately on June 15, 2011 to comply with the Order (#257).  On
that date, Shana Tello, Medical Staff Director of UMC, along with
Defendant Carrison, contacted the NPDB for directions on how to void

6

1  the reports, and took all necessary steps to void the reports and
2  received confirmation that both reports were voided.  (Temporary
3  Records of Submission for the revised Report #1 and Report #2, Ex.
4  C. (#371).)   The Doctor Defendants claim that Ms. Tello voided the
5  two reports in good faith, believing that she was voiding both
6  Report #1 and Report #2.  However, when the original Report #1 was
7  revised, it was assigned a new document number.  (Tello Aff. Ex. B
8  (#371).)   Ms. Tello was not advised of the fact that voiding the
9  revised report would not void the original report.  (Tello Aff. Ex.
10 B (#371).)

11      The Doctor Defendants claim that on Saturday, February 11,
12 2012, Plaintiff's counsel sent an email to all counsel advising of
13 the NPDB report that had not been voided.  (Hafter Email Ex. D
14 (#371).)   The Doctor Defendants claim that they initially believed
15 Plaintiff's counsel was mistaken when the Doctor Defendants saw
16 Plaintiff's counsel's email on Monday, February 13, 2012.  Plaintiff
17 filed the instant motion on February 13, 2012.  Defendants queried
18 the NPDB and received information indicating that the reports were
19 voided properly.  (Query Results Ex. E (#371).)  On February 15,
20 2012, as a result of communication with Plaintiff's counsel, The
21 Doctor Defendants learned that there were three document control
22 numbers instead of two, due to the revision of Report #1, and the
23 Doctor Defendants immediately rectified the error.  On February 16,
24 2012, Report #1 was voided.  (Temporary Record of Submission, Ex. G
25 (#371).) The Doctor Defendants claim that while that report was not
26 voided until February 16, 2012, any entity who queried Plaintiff
27 prior to the February 16, 2012 void would have had a clear

28                                    7

1  understanding that everything was voided in June of 2011 because the

2  reports are all linked together.  (Query Results Ex. E (#371))

3      The Doctor Defendants argue that there is no proof that

4  Plaintiff has lost jobs due to Defendants' error in believing that

5  all reports had been voided, and that they should not be held in

6  civil contempt because the error was unintentional.

7      Civil contempt "consists of a party's disobedience to a

8  specific and definite court order by failure to take all reasonable

9  steps within the party's power to comply."  In re Dual-Deck Video

10  Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.

11  1993).  "There is no good faith exception to the requirement of

12  obedience to a court order."  Id. (citing In re Crystal Palace

13  Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987)).  However,

14  a party should not be held in contempt if the action appears to be

15  based on a good faith and reasonable interpretation of the court

16  order.  Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics,

17  Inc., 689 F.2d 885, 889 (9th Cir. 1982)).  "'Substantial compliance'

18  with the court order is a defense to civil contempt, and is not

19  vitiated by 'a few technical violations' where every reasonable

20  effort has been made to comply."  Id. (citing Vertex, 689 F.2d at

21  891).  The burden is on the moving party to show the violation by

22  clear and convincing evidence.  Id. (citing Vertex, 689 F.2d at

23  889).

24      We are convinced that the Doctor Defendants' failure to void

25  all reports was not a wilful violation of the stipulated court Order

26  (#257).  However, Plaintiff has shown by clear and convincing

27  evidence, and the Doctor Defendants do not dispute, that the Doctor

28                                    8

Defendants failed to follow the court Order (#257) requiring any and all NPDB reports made by UMC for Plaintiff be voided.  Failure to void the reports, although unintentional, does not constitute substantial compliance of the Order (#257) in these circumstances. Plaintiff argues that the Doctor Defendants could have queried the NPDB to ensure that all reports had in fact been voided.  The Doctor Defendants have shown that they did attempt to void two reports, and received Temporary Records of Submission confirming that those reports have been voided.  The Query Results (Ex. E (#371)) show also that two reports were voided, but lists an initial action, made on 6/17/2008.  While those Query Results are shown in a way that Defendants could have mistakenly believed that the initial report was voided, the end result is that a report that should have been voided in June 2011 remained on the NPDB for eight additional months, a direct violation of the Order (#257).

We reject, however, Plaintiff's argument that he is entitled to $1,000 per day since June 15, 2011 until an award is made.  He argues that this number represents his actual loss as a result of the Doctor Defendants' failure to follow our Order (#257), because he was receiving this amount in his locum tenens position at Visalia Health Care Clinic, which was terminated because he could not obtain clinical privileges at their hospital.  It has not been shown that his position at Visalia was terminated due to the NPDB reports, nor are we convinced of the propriety of awarding such a large amount. He also requests at least $250,000 as a coercive fine, a number that appears to represent his potential salary at jobs he has pursued in the past year.  The Doctor Defendants argue that there is simply no

1 evidence that Plaintiff lost jobs due to the Doctor Defendants'
2 error in voiding the NPDB reports.  We agree that Plaintiff has not
3 shown that the lost jobs were a result of the NPDB reports, or that
4 he is entitled to the amount of compensation he requests.  Plaintiff
5 is entitled to fees associated with bringing the Motion for
6 Sanctions (#356), but the Court cannot determine, on the basis of
7 the information before it, what additional fines Plaintiff should
8 receive.  Therefore, the Court will grant the parties time to brief
9 the issue.

10

11   **V. Motion for Leave to File Fifth Amended Complaint (#369)**

12      On March 1, 2012, Plaintiff filed a Motion for Leave to File
13 Fifth Amended Complaint (#369), requesting leave to add a cause of
14 action for a contractual theory of the breach of implied covenant of
15 good faith and fair dealing. On March 8, 2012, Defendants Bernstein,
16 Carrison, Ellerton, Roberts, and the Medical and Dental Staff filed
17 a response (#387).  On March 15, 2012, Defendants Brager, Collins,
18 Giunchigliani, Maxfield, Reid, Weekly, Woodbury, and UMC filed a
19 response (#401).  On March 19, 2012, and on March 26, 2012,
20 Plaintiff filed replies (##406, 422).

21      In our Order (#366), we found that Plaintiff had alleged
22 tortious breach of the implied covenant of good faith and fair
23 dealing rather than a contractual one, based on Plaintiff's
24 complaint and the tort-style damages he seeks.  Plaintiff now seeks
25 to add a contractual cause of action for breach of the implied
26 covenant of good faith and fair dealing, arguing that Defendants
27 violated the Bylaws, Credentialing Manual, and other governing

28                                      10

1  documents in their treatment of Plaintiff's privileges.  Plaintiff

2  alleges that those documents created a contractual relationship

3  between himself and Defendants.  He includes specific factual

4  allegations pertaining to the provisions of the governing documents

5  Defendants violated in the proposed fifth amended complaint (#369-

6  1).

7       Our previous Order found that the previous complaint pled only

8  a cause of action for tortious breach of the implied covenant of

9  good faith and fair dealing.  The statute of limitations to plead a

10 contractual claim has not yet run. While Nevada has not yet

11 determined whether a hospital's bylaws can create an enforceable

12 contract between the hospital and its staff, as well as between the

13 staff and its members, other courts have found the bylaws to create

14 such a contract.  See Williams v. University Medical Center of

15 Southern Nevada, 688 F.Supp.2d 1134, 1141-42 (D. Nev. 2010); Janda

16 v. Madera Community Hosp. 16 F.Supp.2d 1181, 1184 (E.D. Cal. 1998).

17 Therefore, we find that Plaintiff may file a fifth amended complaint

18 alleging a contractual breach of the implied covenant of good faith

19 and fair dealing.

20

21              **VI. Motions to Strike Joinders (## 391, 402)**

22      Plaintiff requests that we strike Documents ## 391, 395, 396,

23 397, 398, 399, and 400 as untimely.  These documents were filed on

24 March 14, 2012, and Plaintiff argues that each of the documents is a

25 few days or weeks late.  He also argues that some of the joinders

26 simply do not make sense, as when the Board of Trustees join in an

27 opposition while having filed their own opposition.

28                                  11

Defendants argue in their opposition (#430) that the joinders were filed because of Plaintiff's inappropriate Notice of Non-Opposition (#389).   The joinders were simple form joinders that did not raise new arguments, did not prejudice Plaintiff or constitute unfair surprise, and therefore Defendants request that the instant Motion to Strike (#402) be denied.

On February 14, 2012, Plaintiff filed a Motion to Strike Defendants' Rebuttal Expert, a motion that the Board of Trustees argues was directed at the Doctor Defendants, who filed their opposition.   When Plaintiff filed a Notice of Non-Opposition, arguing that UMC and the Board of Trustees' lack of opposition meant the motion should be granted, the Board of Trustees and UMC filed their joinder, albeit in an untimely manner.   Because the Board of Trustees has shown good cause in filing untimely joinders, all of which are form joinders and cannot constitute surprise, and were prompted by Plaintiff's filing of a notice of non-opposition, the Court shall deny Plaintiff's Motion to Strike (#402).

## VII. Motion to Set Trial Date (#471)

On May 3, 2012, Plaintiff filed a Motion to Set Trial Date (#471).   In light of the new amended complaint, ongoing discovery, and pending motions, this motion (#471) shall be denied. Many of those pending motions, including the motion to file an amended complaint, were filed by Plaintiff.   We caution Plaintiff that filing numerous frivolous motions will not assist the Court in moving along an action as complex as this one.

12

1

### VIII. Conclusion

2     **IT IS, THEREFORE, HEREBY ORDERED** that the Motion to Strike
3 (#346) is **GRANTED IN PART AND DENIED IN PART**: Plaintiff shall remove
4 references to DOE Defendants, but sanctions will not be awarded.

5     **IT IS FURTHER ORDERED** that the Motion for Reconsideration
6 (#350) is **GRANTED**.  Our previous Order (#340) was incorrect insofar
7 as we denied Plaintiff the opportunity to add additional voting
8 members of the MEC.

9     **IT IS FURTHER ORDERED** that the Joint Motion to Extend Discovery
10 (#355) is **GRANTED**.  Discovery shall be reopened for a period of
11 sixty days following the filing of Plaintiff's fifth amended
12 complaint pursuant to this Order.

13     **IT IS FURTHER ORDERED** that the Motion for Sanctions (#356) is
14 **GRANTED**.  Plaintiff may submit a motion within twenty-one (21) days
15 seeking fees and additional amounts.  Responses and replies may be
16 filed in accordance with the Federal Rules and the Local Rules.

17     **IT IS FURTHER ORDERED** that the Motion for Leave to File Fifth
18 Amended Complaint (#369) is **GRANTED**.  Plaintiff may file a fifth
19 amended complaint adding a cause of action for the contractual
20 breach of the implied covenant of good faith and fair dealing,
21 adding voting members of the MEC, and removing all references to DOE
22 Defendants within fourteen (14) days of the date of entry of this
23 Order.  We are not unmindful of the burden this places on the
24 parties at such a late date, but find that in light of the late
25 disclosure of the voting members of the MEC, leave to amend must be
26 granted.

27

28                                         13

1    **IT IS FURTHER ORDERED** that the Motions to Strike Joinders

2  (#392, 402) are **DENIED**.

3    **IT IS FURTHER ORDERED** that the Motion to Set Trial Date (#471)

4  is **DENIED**.

5

6

7  DATED: July 6, 2012.

8

9                                    _____
                                     UNITED STATES DISTRICT JUDGE

14