UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD CHUDACOFF, | ) |
|    Plaintiff, | ) Case No. 2:08-cv-00863-RCJ-GWF |
| vs. | ) **ORDER** |
| UNIVERSITY MEDICAL CENTER, *et al.*, | ) |
|    Defendants. | ) |

This matter is before the Court on Plaintiff's Motion for Sanctions Against Defendants John Ellerton, Dale Carrison, Marvin Bernstein and Donald Roberts Pursuant to Fed.R.Civ.P. 37 and Against Their Counsel Pursuant to 28 U.S.C. § 1927 (#443), filed on April 9, 2012; Plaintiff Supplement to Emergency Motion to Compel and Motion for Sanctions (#450), filed on April 11, 2012; Defendants' Opposition to Plaintiff's Motion for Sanctions Against the Individual Physicians and Their Counsel Pursuant to 28 U.S.C. § 1927 (#462), filed on April 26, 2012; and Plaintiff's Reply in Furtherance of Plaintiff's Motion for Sanctions (#476), filed on May 7, 2012.

By this Order, the Court also clarifies its January 17, 2013 order granting Plaintiff's Motion to Compel Discovery (#441). This Order also resolves Plaintiff's Motion for Order to Show Cause Why Certain Defendants Should Not Be Sanctioned for Failure to Comply with this Court's Order Granting Plaintiff's Motion to Compel Discovery (#606), filed on January 24, 2013.

## BACKGROUND

Plaintiff has sued multiple Defendants pursuant to 42 U.S.C. § 1983 for violating his right to due process of law under the Fourteenth Amendment to the United States Constitution and for tortious breach of the covenant of good faith and fair dealing by suspending his medical staff

privileges at University Medical Center, the county operated hospital in Clark County, Nevada. As a result of the reporting of the suspension of Plaintiff's medical staff privileges, he was allegedly terminated from his professorship at the University of Nevada Medical School and was unable to secure employment as a staff physician at other hospitals. In addition to injunctive relief, Plaintiff seeks recovery of compensatory damages and punitive damages against individually named Defendants John Ellerton, Dale Carrison, Marvin Bernstein and Donald Roberts.[1]

Plaintiff served interrogatories and requests for production of documents on Defendants Ellerton, Carrison, Bernstein and Roberts seeking information and documents relating to their net worth for purposes of Plaintiff's punitive damages claims. The interrogatories asked each Defendant, for the period from July 2, 2008 to the present, to identify (1) all bank accounts, investment accounts or other accounts with any financial institution which the Defendant has owned, (2) any businesses that the defendant, his spouse or family trust has owned, (3) any real estate that defendant, his spouse or family trust has owned, and (4) any assets that were purchased for more than $10,000 that the defendant, his spouse or family trust has owned. The interrogatories also asked defendant to state his net worth for the years 2008, 2009 and 2010, and to identify the bookkeepers, accountants, or other financial professionals that defendant or his spouse have engaged for professional services during the past 5 years. Plaintiff's requests for production of documents requested each Defendant's complete federal income tax returns from 2005 to the present. *See Motion to Compel (#441), Exhibit D.*

Defendants served their responses to Plaintiff's interrogatories and requests for production on April 6, 2012. Defendants objected to each interrogatory or request for production "on the grounds that it is irrelevant, invades the privacy of these responding Defendants and is the subject of a pending motion before the Court." Defendants stated that their responses may be supplemented once the Court rules on Defendants' pending motion. *Motion to Compel (#441), Exhibit D.* The "pending motion" referred to by Defendants is their Motion for Partial Summary

---

[1] Plaintiff has joined additional individual defendants in his Fifth Amended Complaint. Those additional defendants have moved for dismissal of the claims against them based on absolute or qualified immunity. The motion to dismiss is still pending.

Judgment (#410), filed on March 22, 2012, in which Defendants move for dismissal of Plaintiff's punitive damages claims as a matter of law. The motion for partial summary judgment remains pending before the Court.

Prior to the filing of Defendants' motion for partial summary judgment, the Court denied Defendants' motion for a protective order (#312) to prevent the Plaintiff from taking the Defendants' depositions. *Order (#374)*, filed on March 1, 2012. In its order, the Court stated that "Chudacoff seeks to depose the four named defendants for two reasons. First, he seeks to determine what went on at the May 27, 2008 MEC meeting, and, moreover, the scope of each defendant's actions at the meeting, which had also been withheld on the basis of peer review privilege. Second, Chudacoff seeks to discuss with each defendant their net worth, which will inform his calculation of a punitive damages claim." *Id., pgs 2-3*.

During the deposition of Defendant Bernstein on April 25, 2012, Defendants' counsel objected to Plaintiff counsel's inquiry into Dr. Bernstein's financial condition on the grounds that Defendant has a pending motion for partial summary judgment on the punitive damages issue. The Magistrate Judge was contacted by telephone and after listening to counsels' argument decided as follows:

> Very good. Well, this case is at the discovery stage, and the principle that guides here in Federal Court is we try to move everything along and put everything in a position where it's available to the parties to use as necessary.
>
> Discovery was reopened, according to the Orders 302, 340, 374, on the issue of damages, and that includes the full scope and panoply of damages that's claimed here. So its appropriate, and we do it in almost every case where punitive damages are issued, allow discovery in regard to what's available.
>
> In this particular circumstance, that information should be kept confidential. The Court calls upon the parties to execute a protective order, or I can just do one unilaterally that seals that information.
>
> Its not to be disseminated beyond counsel in the case and go forward and get it done. If the motion for summary judgment is successful, then, obviously its something that will just be tucked away and no longer at issue, but rather than wait – the filing of the motion, obviously doesn't stop it in this case.

. . .

>I have looked at that particular motion. Judge Reed will decide it, but for purposes of discovery, the case should move forward.

*See Defendant's Emergency Motion to Enforce Amended Stipulated Protective Order (#609), Exhibit C, Excerpt of Dr. Bernstein's Deposition Transcript.*

The parties' counsel did, in fact, enter into an Amended Stipulated Protective Order (#507) on July 25, 2012 which provided that the production of financial information would be for counsels' eyes only and would not be shared or distributed to others, including the Plaintiff. The Court, however, never entered the Amended Stipulated Protective Order. Nor did the Court rule on Plaintiff's Motion to Compel Discovery (#441) until after this case was reassigned to the undersigned and the Court granted the motion on January 17, 2013.

On January 24, 2013, Defendant's counsel delivered to Plaintiff's counsel financial documents for Defendants Ellerton, Carrison, Bernstein and Roberts in alleged compliance with the Court's January 17, 2013 order granting Plaintiff's motion to compel. Plaintiff promptly filed his Motion for Order to Show Cause (#606) on January 24, 2013, asserting that the documents produced by Defendants do not comply with the Court's order granting the motion to compel.

## DISCUSSION

**1. Modification and Clarification of Order Granting Plaintiff's Motion to Compel (#441) and Order Resolving Plaintiff's Motion for Order to Show Cause (#606).**

In an effort to bring some control over this litigation and perhaps stave off unnecessary motions to compel, for protective orders and for sanctions, the Court, *sua sponte*, modifies and clarifies its order granting Plaintiff's Motion to Compel (#441).

In *Cataldi v. Siracusano*, 2012 WL 870222, *1-*2 (D.Nev. 2012), this Court stated as follows:

>"'A defendant's financial condition is relevant to the pursuit of punitive damages.'" *United States v. Autumn Ridge Condominium Assoc.,* 265 F.R.D. 323, 327 (N.D.Ind.2009), quoting *Platcher v. Health Professionals, Ltd.,* 2007 WL 2772855, at *2 (C.D.Ill.2007). Most courts do not require the plaintiff to make a prima facie showing of merit on its punitive damage claim before permitting discovery of a defendant's net worth. *Autumn Ridge,* 265 F.R.D. at 328. "The countervailing approach, and the one chosen by the Supreme Court of Nevada, is that a plaintiff must first allege specific facts sufficient to support a claim for punitive damages." *Momot v. Mastro,* 2011

WL 18333349, *3 (D.Nev.2001) (citing *Hetter v. Eighth Judicial Dist. Court of State In and For County of Clark,* 110 Nev. 513, 519, 874 P.2d 762, 766 (Nev.1994) (Nevada law allows for the discovery of income tax returns when related to the issue of punitive damages, so long as the requesting party has demonstrated some factual basis for the punitive damages claim).  Under either approach, Plaintiff has demonstrated a basis for her punitive damages claim.  Plaintiff is alleging claims for assault, battery, intentional infliction of emotional distress and a violation of NRS § 41.690, claims which allow for recovery of punitive damages.

Although only the defendant's current financial condition is relevant to the issue of punitive damages, the courts permit some retrospective discovery regarding the defendants' financial affairs.  In regard to the time period for which discovery may be sought and the nature of the information and documents that should be produced, *Autumn Ridge* states:
> Other district courts addressing this issue have concluded that financial records over approximately the past two years is sufficient to establish a defendant's current net worth.  *See E.E.O.C. v. California Psychiatric Transitions,* 258 F.R.D. 391, 395 (E.D.Cal.2009) (permitting disclosure of financial statements from 2007 and 2008, and any information available through 2009); *S. California Hous. Rights Ctr.,* 2006 WL 4122148, at *2 (limiting discovery of financial documents to time period of 2004 through mid–2006); *Lane v. Capital Acquisitions,* 242 F.R.D. 667, 670 (S.D.Fla.2005) (limiting discovery of financial documents to period of 2003 through mid–2005).

In *Southern California Housing Rights Center v. Krug,* 2006 WL 4122148 (C.D.Cal.2006), the court also limited discovery of defendants' financial information to a two year period and held that plaintiff was entitled to obtain the following types or categories of documents: Documents which identify and provide information about the value of all property and other assets owned, in whole or in part by the defendants, profit and loss statements, balance sheets that relate to assets, inventories, liabilities, gross and net income and amount of any undistributed business profits. The court reserved the option to order production of tax returns if the other financial information provided by the defendants was not adequate to show their net worth.  *Id.* at *3.

Defendants objected to Plaintiff's interrogatories and requests for production of documents regarding financial information solely on the basis that Defendants' financial information was irrelevant–until and unless the Court denied Defendants' motion for partial summary judgment on punitive damages. Defendants did no specifically object to production of their tax returns or to the time period covered by the discovery requests. In response to the Court's January 17, 2013 order, the Defendants' counsel produced copies of Defendant Ellerton's 2010 and 2011 federal income tax returns. Defendants' counsel produced a copy of Defendant Roberts' 2010 federal income tax return. Defendants' counsel produced a copy of Defendant Carrison's 2011 federal income tax

return. Defendants' counsel produced a three page personal financial statement, dated November 15, 2011, that Defendant Bernstein apparently provided to U.S. Bank and an undated two page personal financial statement that Defendant Bernstein apparently provided to City National Bank. No income tax returns have been produced for Defendant Bernstein.

The Court sees no reason for requiring the Defendants to produce more than their 2010 and 2011 federal income tax returns–bearing in mind that the purpose of the discovery is to determine Defendant's net worth as of the time of trial. Given the pendency of dispositive motions and the need for further discovery once those motions are resolved, it is unlikely that this case will proceed to trial until later this year or possibly next year. Defendant Bernstein is therefore ordered to produce copies of his 2010 and 2011 federal income tax returns. Defendant Carrison is ordered to produce a copy of his 2010 federal income tax returns. Defendant Roberts is ordered to produce a copy of his 2011 federal income tax return. Defendants Ellerton, Carrison, Bernstein and Roberts are also required to produce copies of their 2012 federal income tax returns once they have been prepared, unless Defendants' Motion for Partial Summary Judgment (#410) is granted *before* those income tax returns are prepared.

Plaintiff has also objected that the copies of the income tax returns for Defendants Ellerton, Carrison and Roberts are unsigned. *See Plaintiff's Motion for Order to Show Cause (#606), pg. 6.* If Defendants possess signed copies of their federal income tax returns then they are ordered to produce signed copies of those returns. Otherwise, the Defendants are ordered to provide Plaintiff's counsel with sworn declarations that the produced copies of their federal income tax returns are true and correct copies of the actual returns filed with the Internal Revenue Service. Defendants should produce signed copies of their 2012 income tax returns.

Based on Plaintiff's motion for order to show cause, it does not appear that Defendants have served answers to Plaintiff's interrogatories relating to their financial conditions. The categories of information sought in Plaintiff's Interrogatory Nos. 1 through 6 are within the scope of information relevant to determining a defendant's net worth. *See Southern California Housing Rights Center v. Krug,* 2006 WL 4122148 (C.D.Cal. 2006). The Court will, however, limit the time period for information to be provided to the period from January 1, 2011 to the present. Defendants will be

6

required to supplement their answers to these interrogatories prior to the close of discovery in this case or the filing of the joint pretrial order, unless Defendants' Motion for Partial Summary Judgment (#410) is granted in the interim. Defendants are further ordered to serve their answers to Plaintiff's interrogatories relating to their financial conditions within seven (7) days from the date of this order.

The parties are further reminded that except as otherwise ordered by the Court, discovery is closed and stayed in this matter pending a decision on the "MEC Doctors" Motion to Dismiss (#510). Plaintiff's counsel is not permitted to subpoena Defendants' bank account, investment account or other financial account records identified by Defendants in answer to Interrogatory No. 1 until such time as the Court authorizes such discovery.

**2.   Plaintiff's Motion for Sanctions (#443).**

Rule 37(a)(5)(A) states that if a motion to compel discovery is granted, the court must, after giving notice and an opportunity to be heard, require the party whose conduct necessitated the motion, or the party's attorney, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless the opposing party's response or objection was substantially justified. Rule 37(a)(5)(c) states that where a motion is granted in part and denied in part, the court may apportion the reasonable expenses on the motion.

In this case, Magistrate Judge Johnston stated in Order No. 374 that Plaintiff was entitled to question the Defendants about their net worth during their depositions. He further stated in the April 6, 2012 telephonic conference during Defendant Bernstein's deposition that Plaintiff was entitled to conduct discovery regarding the Defendants' financial conditions, notwithstanding Defendants' pending motion for summary judgment on the issue of punitive damages. Magistrate Judge Johnston's decision was consistent with written orders issued in this and other federal districts, including *Cataldi v. Siracusano, supra, Momot v. Mastro,* 2011 WL 18333349, *3 (D.Nev. 2001), *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101 (D.Nev. 2011), *Sherwin v. Infinity Auto Ins. Co.*, 2011 WL 4500883 (D.Nev. 2011) and *United States v. Autumn Ridge Condominium Assoc.,* 265 F.R.D. 323, 327 (N.D.Ind. 2009). Notwithstanding Magistrate Judge Johnston's ruling, Defendants persisted in objecting to the production of Defendants' financial information. *See*

*Defendants' Opposition to Plaintiff's Motion to Compel (#463)*.  The Court therefore concludes that Plaintiff is entitled to an award of reasonable expenses, including attorney's fees, incurred in the pursuit of its Motion to Compel (#441).

The Court has reservations about awarding fees and expenses or other monetary sanctions under Rule 37 where each side repeatedly accuses the other (sometimes with justification) of engaging in discovery or other litigation misconduct.  The Court could easily find itself required to keep a running balance sheet of the respective fees and costs awarded to each side for the opposition's misconduct.  In this instance, for example, the Court was in the process of considering Plaintiff's Motion for Sanctions (#443) when Plaintiff's counsel, having received Defendants' partial production of financial information, elected to unilaterally withdraw from the Amended Stipulated Protective Order (#507) that he signed on July 25, 2012 and then send the financial records to his client in contravention of the agreement that he made.  This, of course, engendered the immediate filing of Defendants' Emergency Motion to Enforce Amended Stipulated Protective Order (#609).  Given that Magistrate Judge Johnston stated on April 6, 2012 that a protective order in accordance with Amended Stipulated Protective Order (#507) should be entered, and that this Court stated on January 17, 2013 that it did not intend to override or modify any protective orders that were in effect, Plaintiff's conduct in unilaterally withdrawing from the Amended Stipulated Protective Order (#507), notwithstanding that it was not executed by the Court, was unreasonable.[2]  The Court will therefore offset any attorney's fees and expenses that it awards to Plaintiff on Motion (#443), by the reasonable attorney's fees and expenses that Defendants incurred in preparing and filing the Emergency Motion (#609).  The offset does not include any attorney's fees for reviewing Plaintiff's opposition to the emergency motion or in preparing a reply to that opposition.

---

[2] This does not mean that Plaintiff was or is precluded from requesting that the Court relieve him from the "attorneys-eyes only" provision of the Amended Stipulated Protective Order (#507).  The Court will address that issue once Defendant's Emergency Motion to Enforce Amended Stipulated Protective Order (#609) is fully briefed.  The Court reiterates, however, that Plaintiff counsel's *unilateral* withdrawal from the stipulation was unreasonable under the circumstances of this case.

In addition, the Court will not award any sanctions in regard to Plaintiff's Motion for An Order to Show Cause (#606) so long as Defendants produce financial information in accordance with the provisions of this order. Finally, if any further disputes arise concerning the production of the financial information of Defendants Ellerton, Carrison, Bernstein and Roberts, the parties' counsel are directed to promptly file a written request for a status hearing with the Court and the Court will schedule a hearing as expeditiously as possible. The parties are encouraged, however, to resolve their differences in accordance with the spirit of the Rules. Accordingly,

**IT IS HEREBY ORDERED** that the order granting Plaintiff's Motion to Compel (#441) is hereby modified and clarified in accordance with the foregoing provisions of this order. Defendants Ellerton, Carrison, Bernstein and Roberts shall provide copies of their income tax returns and answers to interrogatories in compliance with this order on or before **February 8, 2013**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions Against Defendants John Ellerton, Dale Carrison, Marvin Bernstein and Donald Roberts (#443) is **granted** as follows:

1. Plaintiff is awarded his reasonable expenses, including attorney's fees, incurred in pursuit of his Motion to Compel (#441), which shall be offset by the reasonable expenses, including attorney's fees, incurred by Defendants in preparing and filing Defendant's Emergency Motion to Enforce Amended Stipulated Protective Order (#609). Each party shall submit an application.

2. Counsel for Plaintiff shall, no later than 14 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in the pursuit of **Plaintiff's Motion to Compel (#441)**. The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

. . .

3. Counsel for Defendants shall have 14 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought by Plaintiff, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded to Plaintiff.

4. Counsel for Plaintiff shall have 7 days from service of the responsive memorandum in which to file a reply.

5. Counsel for Defendants shall, no later than 14 days from the date of this order, also serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in preparing **Defendant's Emergency Motion to Enforce Amended Stipulated Protective Order (#609)**. The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

6. Counsel for Plaintiff shall have 14 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

7. Counsel for Defendants shall have 7 days from service of the responsive memorandum in which to file a reply.

8. Plaintiff's Motion for Order to Show Cause Why Certain Defendants Should Not Be Sanctioned for Failure to Comply with this Court's Order Granting Plaintiff's Motion to Compel Discovery (#606) is **denied**, without prejudice to Plaintiff's filing a renewed motion for sanctions if the Defendants John Ellerton, Dale Carrison, Marvin Bernstein and Donald Roberts unreasonably fail to comply with the requirements of this order regarding production of their financial information. Prior to filing any further motions relating to production of Defendants' financial

information, however, the parties shall file a written request for a court hearing regarding the dispute which the Court shall schedule as expeditiously as possible.

DATED this 1st day of February, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge