**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| RICHARD CHUDACOFF, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 2:08-cv-00863-RCJ-GWF |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA et al., | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of the suspension of a doctor's hospital privileges and the external reporting of the suspension. Pending before the Court are three motions for summary judgment and a motion for a certificate of appealability. For the reasons given herein, the Court denies the motion for summary judgment as to the statute of limitations on the § 1983 claims as moot, grants summary judgment as to punitive damages, denies summary judgment as to the state law bad faith claims, orders the Clerk to enter judgment on the adjudicated claims under Rule 54(b), and stays the case.

**I.    FACTS AND PROCEDURAL HISTORY**

**A.    Facts**

In July 2008, Dr. Richard Chudacoff, sued University Medical Center of Southern Nevada ("UMC"), The Medical and Dental Staff of UMC (the "UMC Staff"), Rory Reid,

Kathleen Silver, Brian Brannman, John Ellerton, Marvin Bernstein, Dale Carrison, and Donald Roberts in this Court for declaratory and injunctive relief. Plaintiff is a an Obstetrician and Gynecologist licensed to practice in Nevada, California, and Texas. (Compl., July 2, 2008, ¶¶ 17–18). He graduated from medical school in 1989, served as a doctor in the U.S. Navy until 1995, and was a private practitioner in Texas thereafter until 2007, including serving as a Clinical Assistant Professor at Baylor College from 2000–2007. (*See id.* ¶¶ 16, 19–20). He moved to Las Vegas, Nevada in February 2007, and he was appointed as an Assistant Professor with the University of Nevada School of Medicine that year, obtaining staff privileges at UMC in December of that year. (*Id.* ¶¶ 25–26).

At UMC, Plaintiff observed deficiencies in the skills of the residents he observed at UMC as compared with the residents he had observed in Texas, which resulted in surgical complications in patients that Plaintiff assisted in correcting. (*Id.* ¶¶ 28–29). On April 16, 2008, Plaintiff wrote a long email to Dr. Paul Stumpf, Professor and Chair of Obstetricians and Gynecologists at UMC to memorialize conversations he had had with Dr. Stumpf regarding these issues and recommending some improvements. (*Id.* ¶ 30). On May 28, 2008, Plaintiff received a two page communication from Ellerton, Chief of Staff at UMC, indicating that the Medical Executive Committee ("MEC") of the UMC Staff had "suspended, altered, or modified" his staff privileges and requested that he undergo drug testing and physical and mental examinations (the "Ellerton Letter"). (*Id.* ¶ 31). The Ellerton Letter indicated that Plaintiff was entitled to a hearing according to the Medical Staff Bylaws (the "Bylaws"), and Plaintiff retained counsel ("Hearing Counsel") through his malpractice insurer to represent him. (*Id.* ¶¶ 33–34). Hearing Counsel wrote to UMC's counsel on June 2, 2008, complaining that there had been no pre-deprivation hearing, requesting the production of relevant records before the post-deprivation hearing, and requesting that the adverse action not be publicized until Plaintiff had an opportunity to respond to the allegations. (*See id.* ¶¶ 35–36).

1   On June 10, 2008, Plaintiff received a letter from University of Nevada, Reno President
2   Milton Glick indicating that Plaintiff's professorship had been terminated because of the
3   suspension of Plaintiff's staff privileges (the "Glick Letter"). (*Id.* ¶ 37). On June 16, 2008,
4   Defendants filed a report (the "Report") with the National Practitioner Data Bank ("NPDB")
5   stating that Plaintiff's staff privileges had been suspended for "substandard or inadequate care"
6   and "substandard or inadequate skill level." (*Id.* ¶ 38). In the Report, Defendants cited four cases
7   where Plaintiff has allegedly caused "serious operative complications during gynecological
8   surgery," once incident of failure to respond to a medical emergency, and several complaints of
9   disruptive physician behavior. (*Id.* ¶ 39). Plaintiff was unaware of any such alleged misconduct
10  before learning of the Report. (*Id.* ¶ 40). On June 18, 2008, Plaintiff was denied temporary
11  privileges at another hospital because of his suspension at UMC. (*Id.* ¶ 41). On June 20, 2008, a
12  private medical device company, Intuitive Surgical, informed Plaintiff that he could no longer
13  serve as a proctor for it because of the Report. (*See id.* ¶ 42). As of the date of the original
14  Complaint, Plaintiff had not been provided with the medical records concerning his alleged
15  malfeasance and had received no hearing date. (*See id.* ¶¶ 43–47).

   **B.     Procedural History**

17  Plaintiff sued Defendants in this Court for violations on the Due Process Clause of the
18  Fourteenth Amendment, breach of the implied covenant of good faith and fair dealing,
19  negligence, libel, slander, negligent infliction of emotional distress ("NIED"), intentional
20  infliction of emotional distress ("IIED"), negligent interference with prospective economic
21  advantage, and intentional interference with prospective economic advantage.
22  The First Amended Complaint ("1AC") added a claim for declaratory and injunctive
23  relief that had apparently been accidentally omitted from the Complaint. (*See* First Am. Compl.,
24  Sept. 22, 2008, ECF No. 46). Judge Reed denied Plaintiff's first motion for a temporary
25  restraining order, but granted a successive motion, temporarily restraining Defendants from:

     threatening to or actually filing a report with the Nation Practitioner Data Bank, as well as the Nevada Board of Medical Examiners and any other hospitals or health care organizations regarding the suspension of Plaintiff's medical staff privileges as a result of certain allegations related to the accurateness of Plaintiff's application for medical staff privileges.

(*See* Min. Order, Nov. 24, 2008, ECF No. 56; TRO, Nov. 26, 2008, ECF No. 58; Extension of TRO, Dec. 9, 2008, ECF No. 69). After a two-day hearing, Judge Reed denied a motion to dismiss based upon immunity under the Health Care Quality Improvement Act ("HCQIA"), denied a motion to stay pending exhaustion of administrative remedies, and granted Plaintiff a preliminary injunction. (*See* Mins., Jan. 6, 2009, ECF No. 81; Prelim. Inj., Jan. 7, 2009, ECF No. 84).

     As requested by Judge Reed at the previous hearing, Plaintiff then filed the Second Amended Complaint ("2AC") to seek the injunction Judge Reed had preliminarily granted against Defendants reporting to the NPDB that Plaintiff's privileges had been suspended for his having falsified his application for privileges. (*See* Second Am. Compl., Jan. 6, 2009, ECF No. 82). Judge Reed granted Plaintiff partial summary judgment that his procedural due process rights had been violated by the pre-hearing suspension of his privileges at UMC and reporting to NPDB, and that Defendants were not entitled to immunity under HCQIA, but denied Plaintiff's motion for a preliminary injunction requiring Defendants to withdraw their report to NPDB. (*See* Order, Apr. 8, 2009, ECF No. 106; Am. Order, Apr. 14, 2009, ECF No. 109). Judge Reed denied cross-motions to reconsider. (*See* Order, May 13, 2009, ECF No. 137). The parties then filed a flurry of summary judgment motions. While those motions were pending, Judge Reed denied a motion for permanent injunction, a motion to reconsider, and a motion for a TRO. (*See* Mins., June 30, 2009, ECF No. 188; Mins., July 1, 2009, ECF No. 190; Order, Aug. 25, 2009, ECF No. 221).[1] Judge Reed denied as frivolous Plaintiff's motion for an order to show cause and

---

[1]At this stage, Plaintiff had been filing numerous repetitive motions for the same injunctive relief, and on August 28, 2009, Plaintiff filed a separate action ("*Chudacoff II*")

warned Plaintiff not to file any more frivolous motions but denied Rule 11 sanctions because Defendants had not complied with the procedural requirements of that rule. (*See* Mins., Nov. 3, 2009, ECF No. 227). In a separate minute order issued the same day, Judge Reed denied Plaintiff's motion to reconsider the denial of a previous motion to reconsider. (*See* Mins., Nov. 3, 2009, ECF No. 228).

In a forty-two page order, Judge Reed then adjudicated thirteen pending motions, including eight motions for summary judgment. (*See* Order, Nov. 4, 2009, ECF No. 229). Judge Reed first denied Plaintiff's motion to file a third amended complaint for futility, noting that the new proposed claims under 42 U.S.C. § 1983 were not sufficiently pled. (*See id.* 11–14). Judge Reed then granted summary judgment to Defendants on Plaintiff's first and second causes of action for due process violations. (*See id.* 20–22). Judge Reed granted summary judgment to Defendants on the defamation claims based upon qualified privilege. (*See id.* 26–27). Judge Reed granted summary judgment to Defendants on the negligence claim because the claim was ultimately based upon an agreement between the parties. (*See id.* 27–28). Judge Reed granted summary judgment to Defendants on the IIED and NIED claims for failure to allege any objectively verifiable physical manifestations of distress. (*See id.* 28–29). Judge Reed granted summary judgment as a matter of law as to the negligent interference with prospective economic advantage claim because there is no such cause of action and granted summary judgment on the intentional interference with prospective economic advantage claim for failure to create a genuine issue of material fact. (*See id.* 29–30). Judge Reed granted summary judgment to the doctor Defendants and the UMC Staff on the breach of the implied covenant of good faith and fair dealing claim because the alleged contract was only with UMC, if anybody. (*See id.* 31).

---

assigned to this Court based upon several individual doctors' actions in administrative hearings against him subsequent to the filing of the present case ("*Chudacoff I*"). (*See* Compl., Aug. 28, 2009, ECF No. 1 in Case No. 2:09-cv-1679).

1  Judge Reed upheld the HCQIA as constitutional. (*See id.* 33–37).  Judge Reed granted summary

2  judgment to Defendants as to Plaintiff's prayer for punitive damages, noting that the only

3  surviving claim was the claim for breach of the implied covenant of good faith and fair dealing as

4  against UMC and the Commissioners, and contract-based claims could not support punitive

5  damages by statute in Nevada. (*See id.* 37).  Judge Reed then exercised his discretion to dismiss

6  that remaining claim without prejudice under 28 U.S.C. § 1367. (*See id.* 37–39).

7        The Clerk entered judgment, and Plaintiff appealed. *See Chudacoff v. Univ. Med. Ctr. of*

8  *S. Nev.*, 649 F.3d 1143, 1146 (9th Cir. 2011).  Judge Reed denied attorney's fees to Defendants

9  under 42 U.S.C. § 1988(b). (*See* Min. Order, Jan. 8, 2010, ECF No. 253).  The Court of Appeals

10 affirmed in part, reversed in part, and remanded, ruling that the "individually named doctor

11 defendants who serve as voting members of UMC's physician credentialing committee and who

12 therefore directly participated in the unlawful suspension of Chudacoff's staff privileges," i.e.,

13 Ellerton, Carrison, Bernstein, and Roberts, were amenable to suit under § 1983, but that because

14 Plaintiff had not shown that his alleged constitutional injuries were the result of any institutional

15 policies, the other Defendants were not. *See id.* at 1146, 1149.  The Court of Appeals ruled:

> that a sufficiently close nexus exists here and that the doctor defendants, in suspending Chudacoff's privileges to practice at a county hospital, were clothed with the authority of state law.  Although comprised of privately employed physicians, the Medical Staff of UMC is controlled and managed by the UMC Board.  Further, the doctors' authority to deprive Chudacoff of his staff privileges flows directly from the UMC, whose authority to regulate physician privileges at a county hospital is in turn directly authorized by Nevada law. The actions of defendants Ellerton, Carrison, Bernstein, and Roberts as governing members of the Medical Staff are therefore fairly attributable to the state, and they cannot now escape liability for their direct and personal participation in Chudacoff's unlawful suspension of staff privileges by claiming private conduct.

22 *Id.* at 1150–51 (citations and internal quotation marks omitted).  The Court of Appeals affirmed

23 summary judgment as to Silver, because she served on the MEC in a "non-voting, non-

24 deliberating capacity," and as to UMC, the UMC Staff, and the Commissioners for failure to

25 satisfy *Monell*. *See id.* at 1151–52.  The Court of Appeals ordered that Plaintiff be given leave to

1  amend to add § 1983 claims against Ellerton, Carrison, Bernstein, and Roberts. *See id.* at 1152.
2  In a separate memorandum opinion, the Court of Appeals affirmed summary judgment on the
3  state law claims. (*See* Mem. Op., June 9, 2011, ECF No. 254).

4        On October 21, 2011, Judge Reed adjudicated several motions. (*See* Order, Oct. 21, 2011,
5  ECF No. 302). Judge Reed granted Plaintiff's motion to amend consistent with the Court of
6  Appeals' ruling but refused to permit Plaintiff to join Defendants he had separately sued in
7  *Chudacoff II*, noting that this Court in that case had already adjudicated those claims in favor of
8  those defendants. (*See id.* 3–4). Judge Reed noted that this Court had dismissed for claim
9  preclusion as against the individual doctors who are Defendants in *Chudacoff I* and had granted
10 summary judgment against the new individual defendants in *Chudacoff II* based upon Judge
11 Reed's now-overturned ruling that the individual doctors were not amenable to suit under
12 § 1983. (*See id.*).[2] Judge Reed denied Plaintiff's motion to consolidate *Chudacoff I* and
13 *Chudacoff II* for lack of jurisdiction because the latter case was on appeal; he declined to make
14 an indicative ruling. (Order 5, Oct. 21, 2011, ECF No. 302). Judge Reed denied a motion to
15 reconsider dismissal of Silver, denied as premature Plaintiff's motion for attorney's fees, granted
16 Plaintiff's motion to reconsider dismissal of the breach of the implied covenant of good faith and
17 fair dealing claim as against UMC and the Commissioners, noting that the only reason for the
18 previous dismissal was a discretionary declination of supplemental jurisdiction, and granted
19 Plaintiff's motion to re-open discovery. (*See id.* 5–8).

20       Plaintiff filed the Third Amended Complaint ("3AC"). (*See* Third Am. Compl., Oct. 23,
21 2011, ECF No. 303). Only the first two of the eight causes of action listed in the 3AC remained

---

23    [2]The Court of Appeals has since reversed summary judgment in *Chudacoff II* because all individual doctor defendants in that case are amenable to a § 1983 action, and because the claims
24 in *Chudacoff II* against some of the same Defendants as in *Chudacoff I* arise out of subsequent events, i.e., later administrative hearings, and are therefore not precluded by the rulings in
25 *Chudacoff I*.

viable at that stage: (1) due process violations pursuant to § 1983 against Ellerton, Carrison, Bernstein, and Roberts; and (2) breach of the implied covenant of good faith and fair dealing against UMC and Clark County Commissioners (in their capacity as trustees of UMC) Bruce Woodbury, Tom Collins, Chip Maxfield, Lawrence Weekly, Chris Giunchigliani, Susan Brager, and Rory Reid. (*See id.*).  Judge Reed denied Plaintiff's motion for discovery sanctions, permitted Plaintiff to proceed with the state law claim as against the UMC Staff, denied Plaintiff's request to file a fourth amended complaint listing additional members of the MEC as to the § 1983 claim, clarified some discovery issues, ordered Plaintiff to file a fourth amended complaint, and denied a motion to set a trial date. (*See* Order, Dec. 21, 2011, ECF No. 340).

Plaintiff filed the Fourth Amended Complaint ("4AC"), listing two causes of action: (1) due process violations pursuant to § 1983 against Ellerton, Carrison, Bernstein, and Roberts; and (2) breach of the implied covenant of good faith and fair dealing against UMC, the UMC Staff, and Clark County Commissioners (in their capacity as trustees of UMC) Bruce Woodbury, Tom Collins, Chip Maxfield, Lawrence Weekly, Chris Giunchigliani, Susan Brager, and Rory Reid. (*See* Fourth Am. Compl., Jan. 3, 2012, ECF No. 343).  Judge Reed granted summary judgment to Defendants that Nevada's statutory damages cap under Nevada Revised Statutes ("NRS") section 41.035 applied to the second cause of action, because Plaintiff's prayer for certain measures of damages made it clear that he sought a remedy in tort, not in contract. (*See* Order, Feb. 28, 2012, ECF No. 366).  Judge Reed struck the 4AC but denied sanctions and gave Plaintiff leave to file a fifth amended complaint omitting Doe Defendants, adding the new individual Defendants he had previously sought to add, i.e., the other voting members of the MEC, and adding a claim for a contractual breach of the implied covenant of good faith and fair dealing. (*See* Order, July 6, 2012, ECF No. 493).  Judge Reed awarded sanctions (in an amount to be determined after further briefing) to Plaintiff because Defendants had failed to comply with a court-approved stipulation requiring them to cause the NPDB to void the previous Report Defendants had made to it. (*See*

1  *id.*). Judge Reed denied Plaintiff's motion to strike and repetitive motion to set a trial date. (*See*
2  *id.*).

3        Plaintiff filed the Fifth Amended Complaint ("5AC"), the current version of the
4  Complaint, listing three causes of action: (1) due process violations pursuant to § 1983 against
5  Ellerton, Carrison, Bernstein, Roberts, Paul Bandt, Jim Christensen, John Fildes, Thomas Hunt,
6  Craig Iwamoto, Daniel Kirgan, Deborah Kuhls, Terry Lewis, Frederick Lippmann, Dianne
7  Mazzu, John McCourt, Paul Stewart, Thomas Vater, Meena Vohra, and Craig Voss (collectively,
8  "MEC Defendants"); (2) tortious breach of the implied covenant of good faith and fair dealing
9  against UMC, the UMC Staff, and Clark County Commissioners (in their capacity as trustees of
10 UMC) Bruce Woodbury, Tom Collins, Chip Maxfield, Lawrence Weekly, Chris Giunchigliani,
11 Susan Brager, and Rory Reid (collectively, "UMC Defendants"); and (3) contractual breach of
12 the implied covenant of good faith and fair dealing against UMC Defendants. (*See* Fifth Am.
13 Compl., July 6, 2012, ECF No. 494).

14       On September 28, 2012, the present case, *Chudacoff I*, was reassigned to this Court.
15 (*See* Order, Sept. 28, 2012, ECF No. 572). In a thirty-two page order, the Court adjudicated two
16 motions to dismiss and five motions for summary judgment. (*See* Order, June 21, 2013, ECF No.
17 669). The Court denied motions to dismiss under the statute of limitations brought by the fifteen
18 newly added MEC Defendants but left open the possibility that they could obtain summary
19 judgment on the issue. (*See id.* 7–8). The Court granted summary judgment against the § 1983
20 claims, however, based upon absolute immunity under *Buckwalter v. Nev. Bd. of Med.*
21 *Examiners*, 678 F.3d 737 (9th Cir. 2012). (*See id.* 10–24). The Court denied summary judgment
22 to UMC, the UMC Staff, and the Commissioners on the breach of the implied covenant of good
23 faith and fair dealing claims. (*See id.* 25–28). The Court granted summary judgment against
24 punitive damages as to the § 1983 claim but not as to the tort-based state law claim. (*See id.* 28).
25 Plaintiff appealed, and the Court of Appeals dismissed the appeal for lack of jurisdiction upon

Defendants' motion. (*See* Order, July 11, 2013, ECF No. 699). The Court recently ruled on approximately a dozen non-dispositive motions. The Court now rules on three motions for summary judgment and a motion for a certificate of appealability.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to

establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

#### A. Summary Judgment Motions

First, the Court denies Motion No. 689 as moot. In that motion, MEC Defendants request defensive summary judgment against the § 1983 claim under the statute of limitations. The motion is moot because the Court has already ruled that MEC Defendants are immune from those claims under *Buckwalter*. The Court would consider a renewed motion on the merits if the Court of Appeals were to reverse on the immunity issue and remand.

Second, the Court grants partial summary judgment to the UMC Staff as a matter of law as against the punitive damages claim. As movants correctly note, punitive damages are not available under a contract-based bad faith claim, *see* Nev. Rev. Stat. § 42.005(1), and although

punitive damages are generally available under a tort-based bad faith claim, they are prohibited in the present case, and compensatory damages in tort are limited, as well:

> An award for damages in an action sounding in tort brought . . . against a present or former officer or employee of the State or any political subdivision . . . arising out of an act or omission within the scope of the person's public duties or employment may not exceed the sum of $100,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

*Id.* § 41.035(1); *see Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 336–37 (9th Cir. 1995).

Third, the Court denies summary judgment to UMC and the Clark County Commissioners as to the contract-based bad faith claim. The existence of an implied-in-fact contract between Plaintiff and UMC, whether the covenant of good faith and fair dealing was breached, and the vicarious liability of the Commissioners for such a breach at the MEC level or their direct liability at the trustee level, are sufficiently disputed to require a trial. As Defendants themselves note in their motion, the Bylaws themselves only immunize Defendants where their actions are taken in good faith, which is the crux of the present dispute. Good faith is for the fact-finder in this case. The Court also rejects Defendants' argument that because Chapter 450 of the Nevada Revised Statutes requires them to maintain the Bylaws, that those Bylaws cannot constitute consideration sufficient to form an implied-in-fact contract. The fact that the statute required Defendants to make an implied offer and give consideration via the Bylaws, which Plaintiff impliedly accepted by beginning work, does not mean that there was no consideration. Nor will the Court grant summary judgment on the tort-based bad faith claim.

> Tort liability for breach of the good faith covenant is appropriate where "the party in the superior or entrusted position" has engaged in "grievous and perfidious misconduct." Awards beyond ordinary contract damages are sanctioned where necessary to "make the aggrieved, weaker, 'trusting' party 'whole,'" and to fully punish the tortfeasor for his misdeeds. Accordingly, we have denied tort liability in certain relationships where agreements have been heavily negotiated and the aggrieved party was a sophisticated businessman.

*Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (citations omitted). "[A]lthough a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability. The kind of breach of duty that brings into play the bad faith tort arises only when there are special relationships between the tort-victim and the tort-feasor . . . ." *K-Mart Corp. v. Ponsock*, 732 P.2d 1364, 1370 (Nev. 1987). The three questions a court asks in order to determine whether a tort-based bad faith claim lies in a wrongful discharge case are:

> 1. Is there, as in the insurance cases, such a superior–inferior power differential as to create a "special element of reliance" resulting from the employee's reliance on the employer's credibility and the employer's promise and powerfully expectant guarantee of . . . benefits?
>
> 2. Would contract damages hold employers [of the type at issue] accountable for [the relevant] kind of misconduct?
>
> 3. Would contract damages, under [the] circumstances . . . , make an aggrieved employee "whole"?

*Id.* at 1371. The *Ponsock* Court took the approach that in bad-faith discharge cases, a jury should be able to award punitive damages:

> Given the relationship of the parties and the circumstances of this case, it does not appear that K Mart would be held adequately accountable by mere payment of contract damages. A thief or embezzler is not thought to be held accountable for his crime by merely being required to return the stolen or embezzled goods; an additional penalty must be imposed. Merely having to compensate for its breach of contract would not hold K Mart and other similarly situated employers accountable for this kind of bad faith.
>
> Similarly, contract damages do not make the Ponsocks of the world whole. Merely giving to Ponsock that to which he is contractually entitled does not make him whole, does not compensate him for the injury, the insult, the wrong suffered at the hands of K Mart.

*Id.* at 1373. As noted, *supra*, section 41.035 limits tort damages and prohibits punitive damages in this case, but the tort claim itself survives.

**B.   Certificate of Appealability**

Finally, the Court grants Plaintiff's request to enter final judgment in favor of MEC

1  Defendants as to the § 1983 claim so that he may appeal that ruling before trial.[3]  The Court
2  agrees that it would be wasteful to have to conduct a second trial if the Court of Appeals were to
3  reverse on the immunity issue.  The Court will therefore under Rule 54(b) direct the Clerk to
4  enter judgment on those claims and will stay the case in this Court.
5  ///
6  ///
7  ///
8  ///
9  ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///

---

[3]Plaintiff is incorrect that the motion would be timely if there were in fact a ten-day time limitation.  The disputed order was entered on June 21, 2013.  The present motion was filed on July 3, 2013.  July 1 and 2, 2013, the tenth and eleventh days, respectively, were not weekends or holidays. *See* Fed. R. Civ. P. 6(a)(1)(C).  But there is no time limitation to file such a motion. *See* Fed. R. Civ. P. 54(b).  The ten-day time limitation applies to a party's ability to seek leave of the Court of Appeals to appeal a non-dispositive ruling after a district court certifies the issue for interlocutory appeal under 28 U.S.C. § 1292(b), not to the party's ability to seek certification from the district court under either § 1292(b) or Rule 54(b).

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 689) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 701) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 702) is DENIED.

IT IS FURTHER ORDERED that the Motion for a Certificate of Appealability (ECF No. 686) is GRANTED.  The Clerk shall enter judgment in favor of Ellerton, Carrison, Bernstein, Roberts, Bandt, Christensen, Fildes, Hunt, Iwamoto, Kirgan, Kuhls, Lewis, Lippmann, Mazzu, McCourt, Stewart, Vater, Vohra, and Voss against Plaintiff as to the claims under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that the case is STAYED.

IT IS SO ORDERED.

Dated this 1st day of November, 2013.

                                                    ROBERT C. JONES
                                          United States District Judge